**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------x
**IN RE:**

**MIRENA IUD PRODUCTS LIABILITY LITIGATION**

*This Document Relates to*

Brown v. Bayer, 14-CV-4876
-------------------------------------------------------------------------x

**Opinion & Order**

13-MD-2434(CS)
13-MC-2434 (CS)
14-CV-4876(CS)

Appearances:

Christopher Oxx
Parker Waichman, LLP
Port Washington, New York
*Counsel for Plaintiff*

Shayna S. Cook
Christopher J. Cook
Brian P. O'Donoghue
Goldman Ismail Tomaselli Brennan & Baum, LLP
Chicago, Illinois
*Counsel for Defendant*

Seibel, J.

  Before the Court is Defendants' Motion to Dismiss, (Doc. 19),[1] the Amended Complaint of Plaintiff Ashley Brown, (Doc. 2 ("AC")). For the reasons stated below, Defendants' motion is DENIED.

  For purposes of this Motion, the Court accepts as true the facts, but not the conclusions, as alleged in the AC. The Parties' knowledge of the factual and procedural history of this case and this multi-district litigation ("MDL") – including the discussion of fact and law in *Truitt v. Bayer*, 29 F. Supp. 3d 345 (S.D.N.Y. 2014), and *In re Mirena IUD Prods. Liab. Litig.*, No. 13-MD-2434, 2015 WL 144214 (S.D.N.Y. Jan. 9, 2014), which are hereby incorporated – is

---

[1] References to "Doc." refer to the docket in No. 14-CV-4876 unless otherwise noted.

1

presumed. I recite only those case-specific facts relevant to this opinion. The crux of this dispute is rooted in Plaintiff's curious decision to file two largely identical lawsuits – the one at bar, and another, filed in California and previously dismissed by this Court on timeliness grounds, (No. 13-MD-2434, Doc. 2150).

## I. Background

### A. Factual Background

Plaintiff Brown is a North Carolina resident, and received all relevant medical treatment in North Carolina. (AC ¶ 15; Doc. 22, at 4 n.1.) Defendant Bayer Healthcare Pharmaceuticals Inc. is a Delaware corporation with a principal place of business in New Jersey. (AC ¶ 16.)

Plaintiff alleges that she had the Mirena intrauterine system ("IUS") inserted on October 12, 2010, and that an x-ray on February 27, 2012, revealed the "IUS overlying the pelvis." (*Id.* at ¶ 42.) On March 5, 2012 "a laparoscopy was performed and the IUS was visualized entangled in the omentum," and then removed. (*Id.*) As a result, Plaintiff filed two largely identical lawsuits alleging various claims including products liability and fraud, first in Missouri state court, and later in California federal court.

### B. Procedural Background

#### 1. The Missouri Action

On August 26, 2013, Plaintiff Brown and 92 other plaintiffs together filed a multi-plaintiff case in the Circuit Court of the City of St. Louis, captioned as *Witherspoon, et al. v. Bayer HealthCare Pharms. Inc*, No. 1322-CC09214. (Memorandum of Law in Support of Defendant's Motion to Dismiss ("Ds' Mem."), (Doc. 20), Ex. A.) Plaintiff joined this suit despite having no apparent connection to Missouri. On September 26, 2013, the *Witherspoon* action was removed to the U.S. District Court for the Eastern District of Missouri, and on

November 26, 2013, it was transferred to this MDL.  On June 16, 2014, Plaintiff filed a severed and amended complaint pursuant to Case Management Order ("CMO") 20, and on June 30, 2014, a new docket number was assigned to Plaintiff's severed action, 14-CV-4876 (the "Missouri Action").

### 2. The California Action

On April 18, 2014, after filing suit in Missouri, Plaintiff, along with 26 other plaintiffs, filed a nearly identical case, based on the same facts, in the U.S. District Court for the Central District of California.  Plaintiff had no apparent connection to California.  Plaintiff attributes her participation in the California case, captioned *Battiest et al. v. Bayer HealthCare Pharms. Inc.*, 14-CV-3022, (Ds' Mem. Ex. C), to "an inadvertent dual filing," (14-CV-6190, Doc. 14).  On June 2, 2014, Plaintiff's California case was transferred to this MDL, after which Plaintiff filed a severed and amended complaint pursuant to CMO 20, and her case was assigned a new docket number, 14-CV-6190 (the "California Action").

On October 21, 2014, pursuant to CMO 22A, Defendants moved to dismiss the California Action with prejudice as time-barred, consistent with this Court's opinion in *Truitt*.  (14-CV-6190, Doc. 6.)  Under CMO 22A, Plaintiff was then required to either voluntarily dismiss her case with prejudice or set forth the specific facts and/or law to distinguish her case from the *Truitt* Order's holding.  Plaintiff did neither.  Instead, she filed a notice of voluntary dismissal, without prejudice, based on the "unique circumstances of Plaintiff's situation" stemming from Plaintiff engaging two different law firms to file complaints on her behalf in California and Missouri. (Doc. 8.)  Plaintiff's failure to comply with CMO 22A resulted in this Court's issuance of an Order to Show Cause ("OSC") on January 20, 2015, requiring her to explain why

3

her case should not be dismissed with prejudice, and specifically ordering her to comply with CMO 22A. (Doc. 10.)

On February 9, 2015, Plaintiff submitted a letter in response to the OSC, arguing that "Plaintiff is not opposed to the dismissal of the [California] Action," but that dismissal of the California Action with prejudice might preclude Plaintiff from moving forward with her nearly identical Missouri Action. (Doc. 14.) Plaintiff also argued that both the Missouri and California Actions are governed by the North Carolina statute of limitations, and therefore both actions were timely filed. *Id.* Arguing that "[d]ismissal with prejudice is a drastic sanction," Plaintiff proposed that this Court either dismiss the California Action without prejudice, or, in the alternative, dismiss the California Action with prejudice, "but include strong qualifying language indicating that said dismissal has absolutely no effect on the [Missouri Action]." *Id.*

On February 25, 2015, after hearing oral argument, this Court dismissed Plaintiff's California Action, 14-CV-6190, with prejudice and without including the "qualifying language" requested by Plaintiff. (13-MD-2434, Doc. 2150.) Further, the dismissal explicitly reserved for consideration any *res judicata* questions that might affect the Missouri Action. (Doc. 24 Ex. C, at 11-12.)

Defendants' sole argument in support of their motion to dismiss is that the dismissal with prejudice of the California Action precludes further litigation, and warrants dismissal, of the Missouri Action by operation of *res judicata*. Accordingly, this Court must decide what, if any, preclusive effect the dismissal of the California Action has on the Missouri Action.

## II. Legal Standard

Under the doctrine of *res judicata*, or claim preclusion, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have

been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). To establish that a claim is precluded under this doctrine, "a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000) (citation omitted). Generally, the affirmative defense of *res judicata* is properly raised under Fed. R. Civ. P. 8(c) in a defendant's answer. *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992). It may, however, be raised as a defense in a Rule 12(b)(6) motion without requiring an answer "when all relevant facts are shown by the court's own records, of which the court takes notice." *Id.*

## III. Discussion

### A. Choice of Law

Two related doctrines govern today's analysis. First, an MDL transferee court "applies the substantive state law, including choice-of-law rules, of the jurisdiction in which the action was filed." *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993) (*per curiam*). Because this case was filed in the Circuit Court of the City of St. Louis, and later removed to Missouri federal district court, Missouri's substantive state law and choice-of-law rules apply. Likewise, when I dismissed the California Action, I was applying California law. As discussed above, the California Action was filed as a diversity action in California federal court, then subsequently transferred to the Southern District of New York for consolidation in the MDL, and eventually dismissed on timeliness grounds based on California statute-of-limitations law.

Second, when determining the claim-preclusive effect of a dismissal by a federal court sitting in diversity, courts apply federal common law, which is "the law that would be applied by

state courts in the State in which the federal diversity court sits." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001).

As the MDL transferee Court sitting in diversity, the rules of *Semtek* and *Menowitz*, together, define the unique adjudicative posture from which I decide the present motion.

### B.  The State in Which the Rendering Court Sits

Defendants argue that the present matter is governed by "a straightforward application of Second Circuit *res judicata* law." (Ds' Mem. at 4.)  Specifically, Defendants argue that under *Taylor v. Sturgell*, 553 U.S. 880 (2008) – which states (in a footnote citing *Semtek*) that, "[f]or judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits" – New York law must apply because this Court, which dismissed the California Action, sits in New York.  (Ds' Mem. at 4 (quoting *Taylor*, 553 U.S. at 891 n.4 (internal quotation marks omitted))).  Plaintiff apparently agrees.  (*See* Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss ("P's Opp."), (Doc. 22), at 3-6) (basing arguments in opposition to Defendants' motion on Second Circuit and New York law).

But when I rendered my decision dismissing the California Action, I was sitting as a California diversity court, in line with the rule of *Menowitz*, which requires MDL courts to apply the state law rules, including choice of law rules, of the jurisdiction in which the action was filed.  Thus, in applying the rule of *Semtek* and *Taylor* – that the claim preclusive effect of a federal diversity court's ruling is to be governed by the law of the state in which that court "sits" – the state in which I "sat" was California.  In other words, the rendering Court in this case, although physically "sitting" in New York while presiding over an MDL, is identical in all relevant respects to a federal diversity court "sitting" in California.  It is therefore California claim preclusion law that governs the present case.

*Semtek*, although not an MDL case, involves a procedural background otherwise remarkably similar to the case at bar.  The *Semtek* plaintiff filed a California state court complaint alleging breach of contract and various tort claims.  Following removal to federal court on diversity grounds, the California district court dismissed the action, "in [its] entirety on the merits and with prejudice," as barred by California's two-year statute of limitations.  *Semtek*, 531 U.S. at 499 (internal quotation marks omitted).  The plaintiff then filed an action in Maryland state court, alleging the same claims, which were not time-barred under the Maryland statute of limitations.  The Maryland court dismissed the action on the ground of *res judicata*. *Id.* at 500.  The appellate court affirmed, holding that, "regardless of whether California would have accorded claim-preclusive effect to a statute-of-limitations dismissal by one of its own courts, the dismissal by the California federal court barred the complaint filed in Maryland, since the *res judicata* effect of federal diversity judgments is prescribed by federal law, under which the earlier dismissal was on the merits and claim preclusive."  *Id.* at 500.

The Supreme Court reversed and remanded, finding that the Maryland court's application of the federal common law used to determine claim preclusive effect was misplaced.  The Court explained that "the claim-preclusive effect of the California federal court's dismissal 'upon the merits' of [plaintiff's] action on statute-of-limitations grounds is governed by a federal rule that in turn incorporates California's law of claim preclusion."  *Id.* at 509.  Thus, to determine whether the California court's dismissal "necessarily precluded the bringing of this action in the Maryland courts," the Maryland court was required to apply California's law of claim preclusion.  *Id*.  The rule ultimately prescribed by *Semtek*, applicable here, is that the second court's determination of the preclusive effect of a federal diversity court's judgment requires

7

application of the claim preclusion rules of the state that provided the rules of law in the first action.  In the case at bar, the state that provided the rules of law in the first action is California.[2]

The Supreme Court, in *Van Dusen v. Barrack*, 376 U.S. 612 (1964), analyzed an analogous federal transfer statute, 28 U.S.C. § 1404, and its discussion illuminates the issue of where the rendering court "sits."  *Van Dusen*, in interpreting §1404 – the federal statute permitting transfer of venue "[f]or the convenience of parties and witnesses, in the interest of justice," 28 U.S.C. § 1404(a), – held (similarly to *Menowitz*) that a transferee court must apply the substantive state law, including choice of law rules, of the jurisdiction in which the action was filed.[3]  *Van Dusen*, 376 U.S. at 639.  The *Van Dusen* court based its holding on the uniformity and anti-forum shopping policies underlying the decision in *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) – a decision which the Supreme Court subsequently characterized as instructing "federal courts in diversity of citizenship cases [] to apply the laws 'of the states in which they sit.'" *Van Dusen*, 376 U.S. at 637 (quoting *Griffin v. McCoach*, 313 U.S. 498, 503 (1941)).  The *Van Dusen* court made clear that that language was not to be taken literally in the

---

[2] The parties seem to apply a purely geographic definition to the term "rendering court."  *Taylor*, 553 U.S. at 891 n.4.  To be sure, previous courts determining the claim preclusive effect of a dismissal by a federal diversity court have been able to decide the issue by looking to the law of the state in which the rendering court physically sat.  *See, e.g., Semtek*, 531 U.S. at 509 (application of California law necessary to determine preclusive effect of California court's dismissal); *Smith v. Woosley*, 399 F.3d 428, 435-36 (2d Cir. 2005) (looking to Pennsylvania law to determine claim preclusive effect of Pennsylvania court's dismissal); *Batzel v. Smith*, 372 F. Supp. 2d 546, 551 (C.D. Cal. 2005) (analyzing North Carolina law to determine claim preclusive effect of North Carolina court's dismissal); *Gulf Mach. Sales & Eng'g Corp. v. Heublein, Inc.*, 211 F. Supp. 2d 1357, 1361 (M.D. Fla. 2002) (applying Mississippi law to determine preclusive effect of Mississippi court's dismissal); *Smolensky v. McDaniel*, 144 F. Supp. 2d 611, 614-15 (E.D. La. 2001) (analyzing preclusive effect of Louisiana court's dismissal under Louisiana and Fifth Circuit law).  None of those "rendering courts," however, was an MDL transferee court sitting in diversity on a case filed in, and transferred from, a foreign jurisdiction.  The claim preclusion choice of law issues in those, and other, cases were capable of being disposed of with a straightforward application of the *Semtek* rule, because, unlike the case at bar, the court that rendered the dismissal of the first action physically sat in the state in which the action was filed and the laws of which provided the rule of decision.

[3] To the extent that the issue at bar today is distinguishable because it calls for the application of federal common law, *Semtek* (as discussed above) establishes that the relevant federal common law simply adopts "the law that would be applied by state courts in the State in which the federal diversity court sits."  *Semtek*, 531 U.S. at 508.  Thus, the particular choice of law analysis in the present case is practically identical to the choice of law analysis contemplated in *Van Dusen* and *Menowitz* with respect to substantive state law.

transfer context. It stated that a "superficial reading of th[at] formulation[] might suggest that a transferee federal court should apply the law of the State in which it sits," but that such a reading "directly contradicts the fundamental" *Erie* aims of fostering judicial predictability and uniformity. *Van Dusen*, 376 U.S. at 637-38. The Court observed that, although in ordinary situations the policy goals of *Erie* can be achieved by "directing federal courts to apply the laws of the states 'in which they sit,'" *id.* at 638-39, such a literal reading of *Erie* and its progeny would "obscure that, in [the § 1404 transfer context], the critical identity to be maintained is between the federal district court which decides the case and the courts of the State in which the action was filed," *id.*, at 639. Thus *Van Dusen* held that "the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue. A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms." *Id.*

This holding recognizes that adherence in the transfer context to the "superficial formulation" criticized in *Van Dusen* could very well lead to vastly different, unpredictable and potentially unjust variations in substantive law solely by virtue of a transfer. For example, in a situation in which a transfer brings a plaintiff to a jurisdiction with less favorable laws than the jurisdiction in which the case was filed (such as a transfer to a jurisdiction with a shorter limitations period), that transfer could ultimately "be tantamount to a motion to dismiss." *Id.* at 629-30.

Although *Van Dusen*'s holding applied to cases transferred under § 1404, its applicability to MDL diversity cases transferred under § 1407 is apparent. *Menowitz* relied on *Van Dusen* for its articulation of the rule that an MDL transferee court applies the substantive law of the jurisdiction in which the action was filed. *See Menowitz*, 991 F.2d at 40. "*Van Dusen* furthers

*Erie*'s policies by insuring that a pre-trial transfer under § 1407 does not lead to the application of a state substantive law that differs from the law applicable in the jurisdiction where the case was properly filed." *Id*. Taken together, the body of relevant case law and underlying policy concerns make clear that the best reading of *Semtek* and *Taylor* in the MDL context is that the rendering court "sits" in "*the forum state* that provided the substantive rules of decision in the first action," *Smolensky*, 144 F. Supp. 2d at 615 (emphasis in original), rather than in the all-but-random state in which the transferee court happens to sit.

There is no logical or legal appeal to the argument that, simply because the case at bar includes the additional, administrative variable of MDL consolidation, *Semtek* or *Taylor* dictate the application of an otherwise foreign jurisdiction's law based on a transfer of venue for efficiency purposes.[4] The Parties give too rigid a reading to the concept of where "the rendering court sits," one which would have this Court impose New York law on a case to which New York bears no factual or legal nexus, other than the fortuitous designation by the Judicial Panel on Multidistrict Litigation ("JPML") of this court as the MDL transferee court. It cannot be that the JPML's decision to consolidate cases before this court to "promote [their] just and efficient conduct," 28 U.S.C. § 1407(a), could operate to subject those cases – regardless of where they

---

[4] *Van Dusen*, in further considering the policy behind *Erie*, noted that "the 'accident' of federal diversity jurisdiction does not enable a party to utilize a transfer to achieve a result in federal court which could not have been achieved in the courts of the State where the action was filed." *Van Dusen*, 376 U.S. at 638. Indulging Defendants' argument here would do precisely that – had neither the California nor the Missouri Actions been transferred to this Court, the suggestion that New York law should apply would be absurd. The opportunity for Defendants to reasonably make that argument was brought about only by operation of Plaintiff's cases' § 1407 transfer to this Court – an "accident" of the sort contemplated in *Van Dusen* and *Erie*'s progeny.

Moreover, in support of its decision, *Van Dusen* examined a Second Circuit case, *H.L. Green Co. v. MacMahon*, 312 F.2d 650 (2d Cir. 1962), which, in finding that New York law applied to a transferee court sitting in Alabama, observed that "[a]lthough as a matter of federal policy a case may be transferred to a more convenient part of the system, whatever rights the parties have acquired under state law should be unaffected. The case should remain as it was in all respects but location." *Id.* at 652-53. Echoing this sentiment, the *Van Dusen* court stated, "[t]he legislative history of [§1404] certainly does not justify the rather startling conclusion that one might get a change of law as a bonus for a change of venue." *Id.* 635-36 (internal quotation marks and footnotes omitted).

10

were filed and where the facts arose – to potentially dispositive Second Circuit or New York law that would have otherwise been wholly inapplicable before consolidation. Indeed, § 1407's goals of "just and efficient conduct" seem, in all relevant respects, identical to the goals of transfer "for [] convenience," "in the interest of justice," under § 1404. Accordingly, as with § 1404, there is no reason to read § 1407 as anything other than "a federal judicial housekeeping measure, dealing with the placement of litigation in the federal courts and generally intended, on the basis of convenience and fairness, simply to authorize a change of courtrooms." *Van Dusen*, 376 U.S. at 636-37.

Now sitting as a Missouri diversity court, I must – per *Semtek* – apply federal common law to determine the preclusive effect of the judgment I rendered while sitting as a California diversity court. Federal common law directs application of the law of the state in which the rendering court "sits." *Taylor*, 553 U.S. at 891 n.4; *Semtek*, 531 U.S. at 508. The forum state that provided the substantive rules of law, and choice of law rules, in the California Action was California. *See Menowitz*, 991 F.2d at 40; *Smolensky*, 144 F. Supp. 2d at 614-15. For the reasons stated above, that is the state in which the rendering court sits for purposes of the instant analysis. Accordingly, as in *Semtek*, the dispositive issue is the claim-preclusive effect a California court would give to dismissal of a case pursuant to California statute-of-limitations law.

### C. Claim Preclusive Effect of California Statute-of-Limitations Dismissal

A federal diversity court's statute of limitations dismissal in one state will not preclude the same claims "in another state's courts unless the claim-preclusion law of the first state treats a dismissal on statute-of-limitations grounds as being 'on the merits' for claim-preclusion

purposes."[5] 18 Moore's Fed. Prac. & Proc. §131.30 (3d ed. 2015). Thus, whether California claim preclusion law treats a dismissal on statute-of-limitations grounds as being "on the merits" is determinative of whether further litigation is permitted with respect to the Missouri Action, the timeliness of which is not disputed.

Some states apply "the traditional rule," which states that the "expiration of the applicable statute of limitations merely bars the remedy and does not extinguish the substantive right, so that dismissal on that ground does not have claim-preclusive effect in other jurisdictions with longer, unexpired limitations periods." *Semtek*, 531 U.S. at 504 (citing Restatement (Second) of Conflict of Laws §§ 142(2), 143 (1969); Restatement of Judgments § 49, Comment *a* (1942)); *see* 18A Wright & Miller § 4441 (2d ed. 2002) ("[D]ismissal of an action on limitations grounds by one court need not preclude further litigation in an action previously filed within the limitations period in another court."). California is one of those states; its courts do not regard dismissal on statute of limitations grounds as a ruling "on the merits" for claim preclusion purposes:

> Termination of an action by a statute of limitations is deemed a technical or procedural, rather than a substantive, termination. Thus the purpose served by dismissal on limitations grounds is in no way dependent on nor reflective of the merits – or lack thereof – in the underlying action. In fact, statutes of limitation are intended to set controversies at rest by foreclosing consideration on the merits of the claim.

*Koch v. Rodlin Enters.*, 223 Cal. App. 3d 1591, 1596 (Cal. Ct. App. 1990) (internal quotation marks and citations omitted); *see Sangster v. San Bernardino Cnty. Sheriff Dept.*, No. 12-CV-

---

[5] The Restatement (Second) of Judgments is consistent with this principle:

> Generally, a judgment that operates to bar another action on the same claim in one state will, under the Full Faith and Credit Clause of the U.S. Const., bar an action on the same claim in another state. This may not necessarily be the case, however, if the action is barred by the statute of limitations of the first state but not of the second . . . .

Rest. (2d) of Judgments, § 19, Comment *f* (1982) (internal citations omitted).

2007, 2013 WL 2121917, at *4 (C.D. Cal. Apr. 16, 2013) ("[U]nder California law . . . a judgment based solely on the statute of limitations is not considered to be on the merits."), *report and recommendation adopted*, 2013 WL 2121908 (C.D. Cal. May 15, 2013); *Bachman v. Toyota Motor Corp.*, No. 10-CV-263, 2010 WL 6500807, *3-4 (M.D.N.C. Oct. 27, 2010) (distinguishing between California ruling based on statute of limitations and California ruling based on statute of repose by finding that, unlike statute of limitations judgments, California views statute of repose judgments as "substantive in nature" and "a decision on the merits for *res judicata* purposes"); *Lackner v. LaCroix*, 25 Cal.3d 747, 751 (Cal. 1979) ("Termination of an action by a statute of limitations defense must be deemed a technical or procedural as distinguished from a substantive termination."); *Myles v. Farmers Grp., Inc.*, No. A139522, 2014 WL 3752071, at *4 (Cal. Ct. App. July 31, 2014) (unpublished opinion) (distinguishing between a ruling on the merits for purposes of applying *res judicata*, and a ruling premised on a "technical, procedural ground, such as the statute of limitations"); *Debro v. L.A. Raiders*, No. A136456, 2013 WL 2338246, at *4 n.3 (Cal. Ct. App. May 29, 2013) (unpublished opinion) ("Because a judgment based on the statute of limitations is considered a technical rather than a substantive termination of an action, it is not considered final for purposes of claim preclusion.") (citation omitted). Accordingly, under California law, the dismissal of the California Action will not preclude an otherwise timely action filed in another jurisdiction.

As noted, in the present dispute, this Court acts as a diversity court sitting in Missouri, *see Menowitz*, 991 F.2d at 40, and applies the California law of claim preclusion to determine the effect of the California Action's dismissal on the Missouri Action, *see Semtek*, 531 U.S. at 508. Because the timeliness of the Missouri Action is not in dispute, and the California Action's dismissal on California statute-of-limitations grounds does not have preclusive effect on the

13

Missouri Action, Defendants' motion to dismiss is denied.[6]  In light of this resolution, I need not address Plaintiff's fairness arguments.

---

[6] Even if I were deemed to be sitting as a New York court when I dismissed the California Action, the result might well be the same.  The Second Circuit case that comes closest to answering the question of whether a dismissal based on expiration of a New York statute of limitations should be given preclusive effect in another jurisdiction where the claim would not be untimely is *Cloverleaf Realty of N.Y., Inc. v. Town of Wawayanda*, 572 F.3d 93 (2d Cir. 2009).  There, the court addressed whether "New York's claim-preclusion law departs from the traditional rule, and instead treats a dismissal for lack of timeliness as extinguishing both the right and the remedy," and concluded that New York (like California) "does not depart from the traditional rule." *Id.* at 95.  Defendants at oral argument pointed to several cases, including cases from the First and Eighth Circuits, that declined to follow *Cloverleaf*'s holding and instead determined that New York does not follow the traditional rule. *See Newman v. Krintzman*, 723 F.3d 308 (1st Cir. 2013) (finding New York law would accord full preclusive effect to a statute-of-limitations-based dismissal); *Rick v. Wyeth Inc.*, 662 F.3d 1067 (8th Cir. 2011) (same).  Defendants also point to a Second Circuit case, *Joseph v. Athanasopoulos*, 648 F.3d 58 (2d Cir. 2011), which addressed the issue of whether a New York court's dismissal of a state discrimination claim on timeliness grounds precluded the plaintiff from bringing her federal discrimination claim in federal court.  The issue of whether a New York court's dismissal of a case on New York statute-of-limitations grounds has preclusive effect in another jurisdiction with a longer, unexpired limitations period has not been squarely addressed by the New York Court of Appeals.  The *Joseph* court, therefore, refrained from deciding the issue, and certified the question to the New York Court of Appeals. *Id.* at 67-68.  Because the plaintiff ultimately discontinued her case, the Court of Appeals declined the Second Circuit's certification. *See Joseph v. Athanasopoulos*, 478 F. App'x 701, 703 (2d Cir. 2012) (summary order).  The Second Circuit subsequently characterized the tension between *Cloverleaf* and *Joseph* as "potentially divergent authority on whether the dismissal of a state cause of action by a New York court on statute of limitations grounds precludes a subsequent federal suit." *Dekom v. Nassau Cnty.*, 595 F. App'x 12, 15 n.2 (2d Cir. 2014) (summary order); *see King v. N.Y.C. Emps. Ret. Sys.*, 595 F. App'x 10, 11-12 (2d Cir. 2014) (summary order) (noting *Joseph* "questioned" *Cloverleaf*'s holding).  But *Cloverleaf* has not been overruled, and thus the only Second Circuit holding on point dictates that New York "does not depart from the traditional rule." *Cloverleaf*, 572 F.3d at 95.  Thus the result could well be the same even if New York were the state where the rendering court sat.

## IV. Conclusion

For the reasons above, the Defendants' motion to dismiss the Missouri Action on *res judicata* grounds is denied. The Clerk of Court is respectfully requested to terminate the pending motion, (13-MD-2434, Doc. 2231), and spread this opinion to, and terminate the pending motions in, the case in the caption.

**SO ORDERED.**

Dated: August 26, 2015
   White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.